IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 21-8 |
| DAMIAN BRADFORD, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER OF COURT**

Presently before the Court is Defendant Damian Bradford's Motion to Modify Conditions of Supervised Release to Permit the Use of Medical Marijuana, which is opposed by the Government. (Docket Nos. 6, 9). After careful consideration of the parties' positions, Defendant's Motion will be denied.

**I.    BACKGROUND**

On March 29, 2006, Defendant was indicted in the United States District Court for the Northern District of Ohio on charges of interstate stalking, in violation of 18 U.S.C. § 2261A, and using and carrying a firearm during the commission of a felony, in violation of 18 U.S.C. §924(c)(1)(A). (Docket No. 1-1). The charges resulted from the shooting death of Dr. Gulam Moonda on May 13, 2005. *See* Def.'s Presentence Investigation Report ("PIR"), ¶¶ 8-19; *United States v. Moonda*, 347 F. App'x 192 (6th Cir. 2009).

As background, Defendant has a lengthy history of substance abuse beginning with marijuana use at age 13. (PIR, ¶ 66). Defendant described himself as a "heavy" user of marijuana on an "everyday basis" from ages 13 to 22. (*Id.*). From ages 20 to 22, Defendant was an "extremely heavy user" of powder cocaine almost daily. (*Id.*, ¶ 67). At age 22, Defendant went

1

to a treatment facility for his cocaine addiction, where he met Donna Moonda. (*Id.*, ¶ 68). Defendant and Donna became romantically involved, despite the fact that she was married to Dr. Moonda, who was a wealthy urologist. *Moonda*, 347 F. App'x at 194.

At some point, Donna asked Defendant to kill Dr. Moonda, promising him "half of everything she was supposed to get." *Moonda*, 347 F. App'x at 194, 195. The plan was for Defendant "to follow the Moondas on their drive [from Pennsylvania] into Ohio; Donna would at some point pull her car onto the shoulder of the road, and this would be [Defendant's] cue to pull in behind, take Gulam's wallet, and then shoot him. Thus, [Defendant's] job was to make the murder look like 'a robbery gone bad.'" *Id.* at 195. The two executed their plan on May 13, 2005: at some point during the Moondas' drive from Pennsylvania to Ohio, Donna pulled onto an emergency shoulder on the Ohio Turnpike, and Defendant, who had been following them, did the same; the Moondas got out of their car; Defendant approached and ordered Dr. Moonda back into the car; Defendant demanded money and Donna handed Dr. Moonda his wallet; Dr. Moonda handed his wallet to Defendant; and, Defendant shot Dr. Moonda once in the head. *Id.*

Following Defendant's arrest and indictment in the Northern District of Ohio, he ultimately pled guilty to both charged offenses, and he was sentenced on July 11, 2007 to a total term of 210 months' imprisonment and 5 years' supervised release. (Docket No. 1-2). Relevant here, Defendant's supervised release conditions include the following: he shall not commit another federal, state, or local crime; he shall not unlawfully possess a controlled substance; and he shall refrain from any unlawful use of a controlled substance. (*Id.* at 3). Defendant's supervision was transferred to this District on January 14, 2021. (Docket No. 1).

Defendant now requests that the Court modify his conditions of supervision to allow the use of medical marijuana, as long as he complies with Pennsylvania law. (Docket No. 6, ¶ 3). Alternatively, Defendant requests that the Court take no punitive action if he is violated for medical marijuana use, as long as that use complies with Pennsylvania law. (*Id.*). According to Defendant, he has been diagnosed with anxiety, depression and post-traumatic stress disorder, and he subsequently applied for a medical marijuana card, which was issued on March 30, 2022. (*Id.*, ¶ 5). Defendant attached to his Motion what appears to be his medical marijuana card, (Docket No. 6-2), but he did not supply any information concerning his certification from a physician or the identity of the issuing physician who reviewed his medical records and determined that he was likely to receive therapeutic benefit from the use of medical marijuana, nor did he explain how he plans to comply with Pennsylvania law relative to his request to use medical marijuana.

The Government argues that Defendant's Motion should be denied for several reasons. (Docket No. 9). First, marijuana possession or use is illegal under federal law, and there is no federal exception permitting medical marijuana use. (*Id.* at 3). Second, prohibiting violations of federal law is a mandatory condition of supervised release. (*Id.* at 5-6). Finally, Defendant has not established that he is using medical marijuana consistent with Pennsylvania regulations. (*Id.* at 3-4).

II.   **DISCUSSION**

The sentencing court was required to impose a mandatory condition of supervised release that Defendant not commit another federal, state, or local crime. *See* 18 U.S.C. § 3583(d) ("The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision. . . ."). Defendant is subject

to that condition, (*see* Docket No. 1-2 at 3), thus Defendant's compliance with federal law is a mandatory condition of his supervised release. Despite the undisputed applicability of this mandatory supervised release condition, Defendant requests that the Court modify it to permit him to use medical marijuana. (Docket No. 6). For reasons this Court previously expressed in *United States v. Griffin*, Crim. No. 21-385-6, 2021 WL 5917185 (W.D. Pa. Dec. 14, 2021) (denying defendant's request that the Court modify the condition of pretrial release which requires that he must not violate federal, state or local law to allow his use of medical marijuana) and *United States v. Perla*, Crim. No. 20-281, 2021 WL 461881 (W.D. Pa. Feb. 9, 2021) (same), and reiterated below, the Court must deny Defendant's request. Although Pennsylvania has legalized medical marijuana use under certain regulated conditions, the possession of marijuana violates federal law, contrary to the clear requirement of 18 U.S.C. § 3583(d).[1]

Pennsylvania's Medical Marijuana Act of 2016 ("MMA") provides that the "use or possession of medical marijuana . . . is lawful within this Commonwealth" so long as a "patient" meets certain requirements. 35 PA. CONS. STAT. § 10231.303. In order to use medical marijuana, a patient first must obtain a certification from an approved practitioner who has determined that he is likely to receive "therapeutic or palliative benefit from the use of medical marijuana." *Id.* §§ 10231.401(a); 10231.403(a)(1), (a)(4). Among other matters, the certification must affirm that the

---

[1] The Court is cognizant that courts in this District have reached differing conclusions as to whether a defendant who is under federal supervision is permitted to use medical marijuana if such use complies with Pennsylvania law. *Compare United States v. Johnson*, Crim. No. 20-86, Docket No. 44 (W.D. Pa. Nov. 3, 2020) (Ranjan, J.) (permitting use); *United States v. Hooper*, Crim. No. 19-142, Docket No. 64 (W.D. Pa. Aug. 6, 2020) (Bissoon, J.) (same); *United States v. Martin*, Crim. No. 09-98, Docket No. 133 (W.D. Pa. Apr. 24, 2019) (Cercone, J.) (same) *with United States v. Gibson*, Crim. No. 06-243, 2022 WL 1046562 (W.D. Pa. Apr. 7, 2022) (Conti, J.) (prohibiting use); *United States v. Attisano*, Crim. No. 20-354, 2021 WL 3860668 (W.D. Pa. Aug. 30, 2021) (Colville, J.) (same); *United States v. Mitchell-Yarbrough*, Crim. No. 18-32, 2021 WL 3738911 (W.D. Pa. Aug. 24, 2021) (Fischer, J.) (same); *United States v. Cannon*, Crim. No. 21-33, Docket No. 36 at 7 (W.D. Pa. May 18, 2021) (Schwab, J.) (same). For reasons explained herein, this Court concludes that Defendant's possession and use of medical marijuana while on supervised release is impermissible because it would violate federal law, contrary to the clear mandate of 18 U.S.C. § 3583(d).

patient has at least one of seventeen qualifying serious medical conditions for which he is under the practitioner's continuing care. *Id.* §§ 10231.103; 10231.403(a)(2), (a)(3). A patient with an approved certification then must apply for an identification card which, if issued, would allow him to obtain medical marijuana from an approved dispensary. *Id.* §§ 10231.303(b)(1)(i); 10231.501; 10231.801(a). Medical marijuana only may be dispensed in certain forms, and the patient must carry a valid identification card any time he is in possession of it. *Id.* §§ 10231.303(b)(2), (b)(7); 10231.304(b).

Although Pennsylvania has legalized certain forms of medical marijuana subject to the various conditions outlined above, it is undisputed that the possession of marijuana remains illegal under federal law. *See* 21 U.S.C. § 844(a). Notably, the federal statute does not make any exception for medical marijuana. *See Gonzales v. Raich*, 545 U.S. 1, 14 (2005) ("By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the manufacture, distribution, or possession of marijuana became a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study."); *United States v. Bey*, 341 F. Supp. 3d 528, 530 (E.D. Pa. 2018) ("The Controlled Substances Act contains no exception—express or implied—for medically-prescribed marijuana."). The *Bey* court explained that the Supremacy Clause mandates that federal law preempts state law in this context:

> The Supreme Court's interpretation of the Controlled Substances Act compels we conclude [the defendant] may not use medical marijuana under federal law. A Pennsylvania statute or policy to the contrary cannot override a conflicting federal statute, as "[t]he Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail."

*Id*. at 531 (quoting *Raich*, 545 U.S. at 29). Given that "federal law preempts Pennsylvania's limited permission to use and possess doctor-prescribed medical marijuana," the court held that

5

"[p]ersons released from prison subject to this Court's supervised release—as with all Pennsylvanians—may not use, possess or distribute marijuana under federal law." *Bey*, 341 F. Supp. 3d at 529; *see also Mitchell-Yarbrough*, 2021 WL 3738911, at *4 ("[F]ederal law leaves no room for an exception for medical marijuana.") (citing *Perla*, 2021 WL 461881, at *3).

In sum, the Court "may, after considering the factors set forth in [§] 3553(a) . . . modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e)(2). Nevertheless, "[t]he Court cannot, and will not, sanction the violation of federal law by a defendant on . . . release, even if state law and the weight of public opinion appear to contradict that federal law." *United States v. Pearlman*, Crim. No. 3:17CR00027(MPS), 2017 WL 7732811, at *8 (D. Conn. July 7, 2017); *see also United States v. Schostag*, 895 F.3d 1025, 1027 (8th Cir. 2018) ("Although district courts 'may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release,' 18 U.S.C. § 3583(e)(2), courts cannot amend conditions to contradict federal law."). Given that a defendant who is on supervised release must "not commit another Federal, State, or local crime during the term of supervision," 18 U.S.C. § 3583(d), and the fact that the possession of marijuana is a violation of federal law and there is no exception for medical marijuana, the Court is without authority to modify Defendant's supervised release conditions to permit him to use medical marijuana.[2]

---

[2] Additionally, as a practical matter, it would be inadvisable and imprudent for the Court to modify the conditions of supervision to permit medical marijuana use by a defendant who has a lengthy and serious history of substance abuse. Here, Defendant was a heavy user of marijuana from ages 13 to 22 and a heavy user of cocaine from ages 20 to 22. (*See* PIR, ¶¶ 66, 67). Defendant's cocaine addiction led him to seek treatment at a facility where he met Donna Moonda. (*Id.*, ¶ 68). Sadly, Defendant's relationship with Donna led to tragic consequences as recounted above. In this Court's estimation, Defendant's significant substance abuse history counsels strongly against the modification he seeks. *See United States v. Woodhull*, 2:20-cr-384, 2021 WL 1375520, at *3 (Apr. 12, 2021) ("It is inadvisable . . . to permit [defendant] to use medical marijuana, in violation of federal law, given her previous substance abuse history and substance abuse treatment history."); *United States v. Anderson*, Crim. No. 12-200,

### III. CONCLUSION

Possession of marijuana remains illegal under federal law, and Defendant's compliance with federal law is a mandatory condition of his supervised release. Accordingly, Defendant's request to use medical marijuana while on supervised release is denied.[3]

An appropriate order follows.

### ORDER OF COURT

AND NOW, this 3rd day of June, 2022, for the reasons set forth in the Memorandum above, IT IS HEREBY ORDERED that Defendant's Motion to Modify Conditions of Supervised Release to Permit the Use of Medical Marijuana (Docket No. 6) is DENIED. All conditions of supervised release set forth in the Judgment dated July 18, 2007 (Docket No. 1-2) remain in effect.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf: All counsel of record
United States Probation Office

---

Docket No. 547 at 1 (W.D. Pa. Feb. 26, 2020) (Fischer, J.) (holding defendant's request to use medical marijuana was "inadvisable given his previously reported substance abuse history, including his unlawful use of marijuana starting at the age of 11 which he previously advocated required the need for further substance abuse treatment"). To the extent Defendant requires additional support and/or treatment for his diagnosis of anxiety, depression and post-traumatic stress disorder, the Court encourages him to consult with the Probation Office to determine the availability of mental health resources and other courses of treatment that may be beneficial for him.

[3] As explained in *United States v. Neely*, Crim. No. 21-279, 2021 WL 5360078 (W.D. Pa. Nov. 17, 2021), "[t]he Consolidated Appropriations Act Rider of 2020 (the "Rider"), which 'prohibits [the Department of Justice] . . . from using funds to prevent Pennsylvania from implementing its own laws that authorize the use, distribution, possession, or cultivation of medical marijuana,' does not compel a different conclusion." *Id.* at *3, n.1 (quoting *Mitchell-Yarbrough*, 2021 WL 3738911, at *8). "Courts have recognized that the Rider is relevant—if at all—only when a defendant invokes the Rider as a means for preventing the DOJ from expending funds to prosecute federal marijuana violations that otherwise comply with state law. Thus, the Rider becomes relevant—if at all—only if or when the Probation office petitions to violate [a] Defendant under the terms of his release and the Government attempts to prosecute said petition." *Id.* (internal quotation marks and citation omitted); *see also Perla*, 2021 WL 461881, at *4 & n.2 (finding Appropriations Rider argument premature where "there [wa]s no pending petition charging that Defendant has violated any condition of his pretrial release" and "Defendant's compliance with the MMA [wa]s not before the Court"). At present, there is no violation petition before the Court in this case.